# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BARBARA BUSHOR,
Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

Case No. 1:09-cv-320
Barrett, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 11) and the Commissioner's response in opposition. (Doc. 17).

## PROCEDURAL BACKGROUND

Plaintiff Barbara Bushor was born in 1960 and has a high school education. Her past

relevant work was as a dog groomer, daycare worker, and retail clerk (stocker and cashier).

Plaintiff filed an application for DIB in June 2005 alleging an onset date of disability of October

1, 2004, due to obesity, heart disease, an affective disorder, diabetes mellitus, and hypertension.

Her application was denied initially and upon reconsideration. Plaintiff then requested and was

granted a de novo hearing before an administrative law judge (ALJ). Plaintiff, who was

represented by counsel, appeared at a hearing before ALJ Richard Boyle.

On October 28, 2008, the ALJ issued a decision denying plaintiff's DIB application. The

ALJ determined that plaintiff suffers from severe obesity, heart disease, an affective disorder,

diabetes mellitus, and hypertension, but that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 13-14). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform light unskilled work except she cannot do any climbing of ladders, ropes, scaffolds, or more than occasional climbing of ramps, stairs, balancing, stooping, kneeling, crouching, and crawling. She must avoid all exposure to hazards, such as unprotected heights or dangerous moving machinery. (Tr. 14). The ALJ determined that plaintiff's subjective allegations concerning her symptoms are not credible to the extent they are inconsistent with the RFC assessment. (Tr. 16). The ALJ determined that plaintiff is unable to perform her past relevant work. However, using the medical vocational guidelines set forth in Grid Rule 202.21 as a framework for decision-making, the ALJ determined that plaintiff is able to perform a significant number of other jobs in the national economy. (Tr. 17). Accordingly, the ALJ concluded that plaintiff is not disabled under the Act.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are

supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to

3

perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S.

4

957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

It is well established that the findings and opinions of treating physicians are entitled to

substantial weight. "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)

("The medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742

F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th

Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially

greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th

Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating

physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case," the opinion is entitled to

controlling weight. 20 C.F.R. § 1527(d)(2); *see also Blakely v. Commissioner*, 581 F.3d 399, 406

(6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters*, 127 F.3d at

530. "The treating physician doctrine is based on the assumption that a medical professional

who has dealt with a claimant and his maladies over a long period of time will have a deeper

insight into the medical condition of the claimant than will a person who has examined a

claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40

F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of

treatment, providing that treating physicians "are likely to be the medical professionals most able

to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique

6

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection

7

with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 11 at 3-10; Doc. 17 at 2-5) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns three errors in this case: (1) the ALJ erred in his analysis of the treating physician opinion; (2) the ALJ erred in his finding of plaintiff's mental residual functional capacity; and (3) the ALJ's finding at Step 5 of the sequential evaluation is not supported by substantial evidence. For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed.

Dr. James A. Derksen, M.D., plaintiff's treating physician since 1996, reported that plaintiff suffers from a mix of physical and emotional impairments, including insulin dependent

8

diabetes mellitus (labile),[1] diabetic peripheral neuropathy, coronary artery disease, unstable

angina, major depression, obesity, and hyperlipidemia.[2] (Tr. 298). In October 2006, Dr. Derksen

opined that plaintiff is limited to lifting no more than five pounds occasionally, standing for no

more than one hour a day (and for only 10 minutes at a time), and sitting for no more than four

hours a day (and for only one hour at a time). (Tr. 294). Dr. Derksen also stated that plaintiff

should never climb, balance, stoop, crouch, kneel, or crawl. (Tr. 295). He also noted several

manipulative and environmental limitations. (Tr. 295-96). Dr. Derksen concluded that plaintiff

would be unable to perform even sedentary work on a sustained basis. (Doc. 297). In support of

these limitations, Dr. Derksen stated:

> The patient has significant coronary artery disease with her history. . . . By nature,
> long-standing diabetes causes not only large coronary atherosclerosis, but
> microvascular atherosclerosis as well. The very small arteries of the heart,
> unfortunately, are not amenable to stent placement. Because of this heart disease,
> the patient continues to suffer daily from angina pectoris (both with and without
> exertion). This pain continues to recur in spite of maximal medical treatment.
> This also give her shortness of breath as well, especially with exertion (anginal
> equivalent). As you can imagine, because of this unstable angina, she is
> extremely limited from any type of physical labor. This would include: lifting,
> carrying, walking, climbing, stooping, crouching, kneeling, crawling, reaching,
> pushing and pulling. Quite frankly, she simply cannot perform any of these
> activities on a sustained basis for gainful employment as she would have chest
> pain, and at the worst, suffer a myocardial infarction (heart attack).
>
> The patient also has labile diabetes with fluctuations of her blood sugars and has
> lost consciousness at time due to hypoglycemia. In addition, she suffers from
> diabetic peripheral neuropathy with numbness of her feet and fingers. With
> absence of the sense of feeling in her fingers and feet, balancing, handling,
> fingering, exposure to temperature extremes and vibration are all profoundly

---

[1]Labile diabetes is a type of diabetes when a person's blood glucose level often swings quickly from high to low and from low to high. http://www.medterms.com/script/main/art.asp?articlekey=7271 (last accessed on April 14, 2010).

[2]Hyperlipidemia is an elevation of lipids (fats) in the bloodstream. http://www.americanheart.org/presenter.jhtml?identifier=4600 (last accessed on April 14, 2010).

affected.

> With her long term chronic problems, the patient also suffers from major depression. She has little emotional reserve. Therefore, her interactions with co-workers and supervision are compromised. She also has limited concentration skills and her ability to react to stress is compromised.

(Tr. 298).

> The ALJ rejected Dr. Derksen's assessment stating:

> I have considered Dr. Derksen's opinion (Exhibit 18F), which outlines very significant exertional and nonexertional limitations. However, the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

(Tr. 16). The ALJ provided no further explanation for his rejection of the treating physician's opinion.

In support of the ALJ's findings, the Commissioner argues that the only notes in the record from Dr. Derksen are from February 2006 through September 2006 and his October 2006 opinion, which do not reveal objective clinical or laboratory findings supporting Dr. Derksen's opinion. (Doc. 17 at 10). The Commissioner also takes issue with plaintiff's citation to the report of Dr. Klein, plaintiff's treating cardiologist, who opined that "certainly from our perspective, [plaintiff] has been disabled in terms of intractable angina." The Commissioner contends this report is conclusory and unsupported and gives an opinion on an issue reserved to the Commissioner. *Id.* Finally, the Commissioner argues that both Drs. Klein's and Derksen's opinions are inconsistent with the "vast majority of record evidence," citing to the RFC assessments of the state agency physicians, plaintiff daily activities, and plaintiff's attack on her

daughter-in-law.[3] *Id.*

The Court determines that the ALJ failed to follow Social Security regulations and Sixth Circuit law in evaluating and weighing Dr. Derksen's opinion on plaintiff's limitations. The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). When the ALJ declines to give controlling weight to a treating physician assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, *and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544) (emphasis added). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakely*, 581 F.3d at 407 (emphasis in the

---

[3]Mental health records reveal that after plaintiff was without her Depakote for 12 days due to an insurance mistake, she perceived her daughter-in-law was trying to take her family from her. Plaintiff tried to choke her daughter-in-law and then locked her in a closet. (Tr. 363).

original and quoting *Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007)).

In this case, the ALJ committed an error of law when he failed to evaluate Dr. Derksen's assessment in accordance with Sixth Circuit precedent and Social Security regulations and give "good reasons" for rejecting the treating physician's opinion. While the ALJ stated he "considered" Dr. Derksen's opinion (Tr. 16), the ALJ failed to give "good reasons" for rejecting that opinion based on the evidence in the record to enable this Court to conduct any meaningful review of the decision. *Wilson*, 378 F.3d at 544. The ALJ stated that Dr. Derksen's reports "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Tr. 16). However, the ALJ failed to identify the type of clinical and laboratory abnormalities he envisioned. Nor did he describe Dr. Derksen's opinion about plaintiff's functional abilities or provide any explanation for rejecting the particular limitations identified based on the evidence in the record.

Contrary to the Commissioner's representation (Doc. 17 at 10), the record contains not only Dr. Derksen's clinical records from February 2006 through September 2006, but his contemporaneous treatment notes from November 14, 2002 through September 27, 2006 (Tr. 299-322), November 10, 2006 through March 9, 2007 (Tr. 354-361), and August 6, 2007 through November 8, 2007 (Tr. 403-405); laboratory reports (Tr. 323-340); and Dr. Klein's detailed letters to Dr. Derksen reporting on plaintiff's cardiology status, treatment, and prognosis from November 2004 through May 2007 (Nov. 2004, Tr. 271; March 2005, Tr. 270; May 2005, Tr. 269; December 2005, Tr. 268; Feb. 2006, Tr. 266; April 2006, Tr. 265; Oct. 2006, Tr. 264; May 2007, Tr. 353). The record shows plaintiff had significant blockage in her arteries requiring drug eluting stent placements in October 2004 (Tr. 142, 146), March 2005 (Tr. 160), and January 2006

(Tr. 156-57). Plaintiff experienced episodes of syncope, fatigue, heart palpitations, shortness of breath, light-headedness, and chest pain. (Tr. 174-98, 176, 265, 266, 268, 269, 270, 273, 278, 281, 307, 309). Dr. Klein, the treating cardiologist, reported in October 2006:

> She has intractable angina that is disabling to her. We have not been able to demonstrate ischemia on Cardiolite scans and have been placing stents in the coronary arteries. At this point, without any clear-cut evidence for ischemia, we will titrate her dose of Ranexa up to try to eliminate her symptoms. She is currently applying for disability and certainly from our perspective, she has been disabled in terms of intractable angina, though we are continuing to work with her aggressively to try to help her.

(Tr. 264). The record also contains evidence of unstable diabetes. (Tr. 307, 315, 318, 320, 328, 356, 357). Dr. Derksen had a wealth of information from which to draw his conclusions and without any indication from the ALJ why this evidence was insufficient, the Court is unable to conclude that the ALJ's decision sets forth "good reasons" for rejecting Dr. Derksen's opinion. *Wilson*, 378 F.3d at 546.

Moreover, there is no indication from the ALJ's decision that he considered the regulatory factors set forth in 20 C.F.R. § 404.1527(d)(2) in determining the weight to afford Dr. Derksen's opinion, including the length, frequency, nature, and extent of the treatment relationship and the consistency of Dr. Derksen's conclusions with the other evidence in the case record. *Blakely*, 581 F.3d at 406. The ALJ failed to assign any weight to Dr. Derksen's opinion although certain factors support affording Dr. Derksen's opinion great weight. Dr. Derksen has treated plaintiff since at least 1996 (Tr. 298) and appears to have been intimately involved in plaintiff's care. The record contains at least five years-worth of progress notes documenting Dr. Derksen's clinical examinations, tests, referrals, and treatment for plaintiff's impairments as discussed above. Cardiologist Klein opined that plaintiff's cardiac impairment was disabling,

13

and the only seemingly contrary evidence are the opinions of the non-examining state agency

physicians whose opinions are entitled to less weight than those of the treating physicians. *See*

*Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (the opinion of a non-examining

physician "is entitled to little weight if it is contrary to the opinion of the claimant's treating

physician.").

Nor can the Court accept the Commissioner's post-hoc rationalization in support of the

ALJ's decision. Where the ALJ has failed to weigh a treating physician's opinion in accordance

with Social Security's procedural regulations, the Court cannot excuse the failure even though

there may be sufficient evidence in the record supporting the ALJ's decision:

> A court cannot excuse the denial of a mandatory procedural requirement
> protection simply because, as the Commissioner urges, there is sufficient evidence
> in the record for the ALJ to discount the treating source's opinion and, thus, a
> different outcome on remand is unlikely. '[A] procedural error is not made
> harmless simply because the [aggrieved party] appears to have had little chance of
> success on the merits anyway.' To hold otherwise, and to recognize substantial
> evidence as a defense to non-compliance with § 1527(d)(2), would afford the
> Commissioner the ability to violate the regulation with impunity and render the
> protections promised therein illusory. The general administrative law rule, after
> all, is for a reviewing court, in addition to whatever substantive factual or legal
> review is appropriate, to 'set aside agency action . . . found to be . . . without
> observance of procedure required by law.'

*Wilson*, 378 F.3d at 546 (internal citations omitted).

The ALJ's rejection of Dr. Derksen's opinion is inconsistent with the legal standards

applicable for determining the weight to a treating physician's opinion and lacks substantial

support in the record. *Blakely*, 581 F.3d at 407. Although the ALJ was not bound by Dr.

Derksen's opinion, the ALJ was obligated to articulate "good reasons" based on the evidence of

record for not giving weight to the treating physician's opinion. *Wilson*, 378 F.3d at 544. He

failed to do so in this case. Accordingly, the ALJ's decision is not supported by substantial

14

evidence and should be reversed. Plaintiff's first assignment of error should be sustained.

Plaintiff's second assignment of error asserts the ALJ erred in his finding of plaintiff's mental residual functional capacity by ignoring the evidence suggesting additional restrictions based on her mental impairments. The ALJ determined that plaintiff suffers from a severe affective disorder. (Tr. 13). However, the only limitation placed on plaintiff's mental functioning is that she be limited to "unskilled" work. (Tr. 14). Plaintiff alleges this finding on plaintiff's mental RFC is not supported by substantial evidence and the Court agrees.

The ALJ reviewed the findings of Dr. Fritsch, the consultative psychologist who examined plaintiff in September 2005, and stated, "Based upon his interview, Dr. Fritsch opined that she is in the low average to average range of intelligence, and she is capable of performing simple and detailed tasks, and she should have no difficulty maintaining appropriate relationships with supervisors, co-workers, or the general public." (Tr. 15, citing Exhibit 9F). In reviewing Dr. Fritsch's report, it is apparent that the ALJ cherry-picked the statements from Dr. Fritsch's report that favored a finding of no disability, while ignoring the statements that directly followed in Dr. Fritsch's report indicating plaintiff was more limited. The ALJ ignored the next three sentences in Dr. Fritsch's report which indicate plaintiff's functioning is more limited than that reflected in the ALJ's opinion:

> However, during times of acute psychiatric symptom exacerbation, Barbara may tend to become somewhat contentious, irritable and/or social avoidant.
>
> Depressive symptoms are chronic, but have escalated, concurrent with worsening medical problems. In my opinion, this combination would make it moderately (if not significantly) difficult for the claimant to respond to job-related stress and demands, at this time.

(Tr. 207).

The non-examining state agency psychologist likewise opined that plaintiff's ability to handle stress and pressure are moderately impaired and that she retains "the ability to perform simple tasks in an environment *where there are not a lot of changes*." (Tr. 220) (emphasis added). The ALJ never acknowledged or addressed these specific findings in the state agency psychologist's opinion. Instead, the ALJ lumped his discussion of all the state agency doctor opinions together and found "those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision)." (Tr. 220). The Court is unable to discern what the ALJ meant by this statement and whether the ALJ actually considered the limitations imposed by the agency doctors.

In addition, the state agency psychologist also determined that plaintiff is moderately limited in her ability to:

•maintain attention and concentration for extended periods;
•work in coordination with or proximity to others without being distracted by them;
•complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
•accept instructions and respond appropriately to criticism from supervisors;
•get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
•respond appropriately to changes in the work setting.

(Tr. 218-19). The Court cannot discern anything in the ALJ's decision which shows he was aware of these limitations or took them into account in determining plaintiff's mental RFC.

Dr. Derksen also opined that plaintiff's major depression compromised her ability to

16

function from a mental standpoint.[4] He reported that plaintiff has "little emotional reserve" which compromises her ability to interact with co-workers and supervisors. (Tr. 298). Dr. Derksen also reported that plaintiff "has limited concentration skills and her ability to react to stress is compromised." *Id.* While Dr. Derksen's opinion is consistent with those of Dr. Fritsch and the state agency psychologists, the ALJ gave no indication in his decision that he ever considered this evidence or weighed the evidence in accordance with the regulations.

The Commissioner nevertheless contends that the ALJ's mental RFC finding is supported by the records of plaintiff's mental health treatment from Warren County Mental Health. The ALJ's decision states that after plaintiff's December 2006 episode with her daughter-in-law plaintiff sought mental health treatment from Warren County Mental Health, responded well, and reported at various times she was "doing great" and handling her depression. (Doc. 17 at 12, citing Tr. 15-16, 376-95).

Once again, the ALJ selectively cited to the record. The ALJ's decision states that on October 17, 2007, plaintiff reported she was "doing great" with less depression and anger and that on December 5, 2007, plaintiff indicated "Risperdal really works." (Tr. 15). However, the ALJ ignored the remainder of the December 5, 2007 progress note indicating plaintiff had been manic for three weeks, "crashed," and attempted suicide by overdosing on her medication. (Tr. 388). The ALJ's decision also states that the progress note January 23, 2008 showed plaintiff was sleeping well and her mood swings were better. (Tr. 15). However, in February 2008

---

[4]A treating physician's opinion on the mental state of his patient constitutes competent medical evidence even though the physician is not a certified psychiatrist. *See Kruetzman v. Apfel*, Case No. C-3-98-121 (S.D. Ohio Sept. 13, 1999). *See also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); *Kratochvil v. Barnhart*, 2003 W.L. 22176084 (D. Kan. Sept. 17, 2003). *See also* 20 C.F.R. § 416.927(d)(2).

17

plaintiff reported she still experienced depression one to two times a week and the depression could be as severe as a 10 on a scale of one to 10. She felt her depression was set off by kids, being home alone and money problems. She reported that she pulled her self out of the depression by cleaning, moving furniture and using friends for support. (Tr. 382). While plaintiff reported in May 2008 that she had been doing well, she also reported she had a lot of stress, ended up in a heated argument, took pills so she could sleep, and felt like she could "end it all now." (Tr. 378). The ALJ's limited citations to the mental health records do not fairly portray plaintiff's mental health functioning for the relevant time period and cannot constitute substantial evidence to support his decision.

To enable meaningful judicial review, the ALJ must articulate good reasons for his rejection of the mental health records which support a finding of greater restrictions on plaintiff's functioning. In this case, the ALJ's selective presentation of the more positive aspects of plaintiff's mental health reports in the record do not negate the findings set forth in the remainder of the records which support a finding of further restrictions based on plaintiff's mental impairment. *See Howard v. Commissioner*, 276 F.3d 235, 240-41 (6th Cir. 2002). Plaintiff's second assignment of error should be sustained.

The third assignment of error alleges the ALJ's Step 5 finding is without substantial evidentiary support in the record. The ALJ determined that plaintiff's limited ability to climb ladders, ropes, scaffolds, ramps, and stairs, to balance, stoop, kneel, crouch, and crawl, and need to avoid all exposure to hazards, such as unprotected heights or dangerous moving machinery has "little or no effect on the occupational base of unskilled light work." (Tr. 17). The ALJ cited to a state agency record giving examples of jobs plaintiff could still do including do jobs as a call out

18

operator, racker, and shipping and receiving weigher. (Tr. 17, citing Tr. 109). Relying on Grid Rule 202.21 as a framework, the ALJ determined there are a significant number of other jobs plaintiff could perform. (Tr. 17).

Plaintiff argues the ALJ erred by relying on an unsigned report by an individual whose qualifications for giving a vocational opinion are not included in the record. Plaintiff also contends the vocational statement fails to indicate the number of these particular jobs that exist in the national or regional economy and fails to incorporate all of plaintiff's non-exertional limitations.

The Commissioner argues that any reliance on such vocational evidence is harmless error since the ALJ properly relied on Grid Rule 202.21 to find a significant number of jobs. The Commissioner asserts that under Social Security Rule 83-14, the ALJ's conclusion about the minimal effect of plaintiff's nonexertional limitations on the occupational base is reasonable. SSR 83-14 states "there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational bases. Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees. . . ." (Doc. 17 at 13).

The ALJ determined plaintiff has the RFC to perform light unskilled work except she cannot do any climbing of ladders, ropes, scaffolds, or more than occasional climbing of ramps, stairs, balancing, stooping, kneeling, crouching, and crawling, and she must avoid all exposure to hazards, such as unprotected heights or dangerous moving machinery. (Tr. 14). Social Security Ruling 83-14 does not address several of the nonexertional limitations imposed by the ALJ on plaintiff's functioning including the limitation that she do no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching, or the restriction on unprotected

19

heights or dangerous moving machinery. Therefore, Ruling 83-14 does not support the ALJ's Step 5 finding in this case. The Court also agrees with plaintiff that the state agency vocational report cited by the ALJ in his decision does not provide substantial evidence supporting his decision for the reasons posited by plaintiff. In any event, since the Court finds the ALJ erred in weighing the opinion of plaintiff's treating physician and in determining plaintiff's mental RFC, the ALJ's Step 5 finding is necessarily premised on unsubstantial evidence. Assignment of error three should be sustained.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher,* 17 F.3d at 176. This matter should be remanded for further proceedings, including a determination of the weight to be accorded to the opinions of plaintiff's treating physicians and an explanation on the record therefor; reconsideration of plaintiff's RFC; and vocational considerations consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED and REMANDED for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _4/15/10_

Timothy S. Hogan
United States Magistrate Judge

20

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BARBARA BUSHOR,
    Plaintiff

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-320

Barrett, J.

Hogan, M.J.

**REPORT AND
RECOMMENDATION**

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).